FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 16, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

OLGA C.,

                    Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

NO:  1:19-CV-3024-RMP

ORDER RESOLVING CROSS-
MOTIONS FOR SUMMARY
JUDGMENT

        BEFORE THE COURT are the parties' Cross-Motions for Summary

Judgment, ECF Nos. 10 and 11.  The Court has considered the motions, the

Administrative Record, the relevant precedent, and is fully informed.

        / / /

        / / /

        / / /

        / / /

        / / /

        / / /

ORDER RESOLVING CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 1

# BACKGROUND

## *Procedural History*

On September 29, 2014, Olga C. [1] filed for Disability Insurance Benefits and Supplemental Security Income.  Administrative Record ("AR") 172–83. [2]  Olga alleges a disability onset date of September 12, 2014.  *Id*.  Olga alleges that she is unable to work due to widespread pain in her lower back, right shoulder, both ankles and heels, and right leg.  *Id*. at 75.

Olga's applications were denied initially and on reconsideration.  *Id*. at 16.  Olga then filed a request for a hearing before an ALJ.  *Id*. at 120–21.  The hearing was held in Yakima, Washington on June 8, 2017.  The claimant and vocational expert Kimberly S. Mullinax, M.A., testified at the hearing, and members of Olga's family submitted statements in support of her application.

## *ALJ's Decision*

**Step One:**  The ALJ concluded that Olga had not engaged in substantial gainful activity since the alleged onset date of September 12, 2014.  AR 19.

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

[2] The Administrative Record is filed at ECF No. 8.

**Step Two:** The ALJ concluded that Olga had the following medical impairments: diabetes mellitus, type II; right shoulder impingement syndrome; trochanteric bursitis; plantar fasciitis; obesity; calcific tendonitis, Achilles tendon. The ALJ rejected ankle, multiple joint, and low back pain, as well as fibromyalgia and depression, as medically determinable impairments (MDIs). AR 19.

**Step Three:** The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. AR 20.

**Step Four:** The ALJ found that Olga had the residual functioning capacity to perform light work with certain limitations. She can frequently reach below shoulder level. She cannot reach above shoulder level (overhead) with her dominant upper extremity. She can occasionally balance, stoop, kneel and crouch. She can never climb or crawl. She should avoid concentrated exposure to cold and heat as well as vibrations. AR 20–21. With this RFC, Olga is capable of performing past relevant work as an agricultural produce packer, agricultural produce sorter, and nursery school attendant. AR 26.

**Step Five:** Olga has not been under a disability, as defined in the Social Security Act, from September 12, 2014, through the date of this decision. AR 27.

/ / /

/ / /

/ / /

# LEGAL STANDARDS

### *Standard of Review*

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court may set aside the Commissioner's denial of benefits only if the ALJ's determination was based on legal error or not supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decisions of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not the reviewing court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational

interpretation, the court may not substitute its judgment for that of the

Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Allen v.*

*Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Thus, if there is substantial evidence to

support the administrative findings, or if there is conflicting evidence that will

support a finding of either disability or nondisability, the finding of the

Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir.

1987). Nevertheless, a decision supported by substantial evidence will still be set

aside if the proper legal standards were not applied in weighing the evidence and

making a decision. *Brawner v. Sec'y of Health and Human Services*, 839 F.2d 432,

433 (9th Cir. 1988).

### *Definition of Disability*

The Social Security Act defines "disability" as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a benefits

claimant shall be determined to be under a disability only if her impairments are of

such severity that the claimant is not only unable to do her previous work but cannot,

considering her age, education, and work experiences, engage in any other

substantial gainful work which exists in the national economy. 42 U.S.C.

§§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both

medical and vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156

(9th Cir. 2001).

### *Sequential Process*

The Commissioner has established a five-step sequential evaluation process

for determining whether a claimant is disabled.  20 C.F.R. § 416.920.  Step one

determines if she is engaged in substantial gainful activities.  If the claimant is

engaged in substantial gainful activities, benefits are denied.  20 C.F.R. §§

404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision

maker proceeds to step two and determines whether the claimant has a medically

severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii),

416.920(a)(4)(ii).  If the claimant does not have a severe impairment or combination

of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which

compares the claimant's impairment with a number of listed impairments

acknowledged by the Commissioner to be so severe as to preclude any gainful

activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also* 20 C.F.R.

§ 404, Subpt. P, App. 1.  If the impairment meets or equals one of the listed

impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the

evaluation proceeds to the fourth step, which determines whether the impairment

prevents the claimant from performing work that she has performed in the past.  If

the claimant is able to perform her previous work, she is not disabled.  20 C.F.R.

§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At this step, the claimant's RFC

assessment is considered.

If the claimant cannot perform this work, in the fifth and final step in the

process, the decision maker determines whether the claimant is able to perform other

work in the national economy in view of her residual functional capacity and age,

education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v); *see also Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie

case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th

Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden

is met once the claimant establishes that a physical or mental impairment prevents

her from engaging in her previous occupation.  The burden then shifts, at step five,

to the Commissioner to show that (1) the claimant can perform other substantial

gainful activity, and (2) a "significant number of jobs exist in the national economy"

that the claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ISSUES ON APPEAL

1. Did the ALJ reversibly err by denying the existence of impairments?

2. Did the ALJ reversibly err by rejecting Olga's testimony?

3. Did the ALJ reversibly err when weighing opinion testimony?

## DISCUSSION

### I. Existence of Impairments

#### A. Fibromyalgia (FM)

Olga argues that she has a medically determinable impairment (MDI) of fibromyalgia (FM), but the ALJ concluded that Olga's alleged FM was not an MDI. FM can be established as an MDI if a physician diagnosis it, and if the plaintiff establishes one of two separate sets of criteria, both laid out in Social Security Ruling 12-2P. The first set of criteria is the 1990 American College of Rheumatology Criteria for Classification of Fibromyalgia, under which the ALJ must find that the claimant has all three of the following:

> (1) A history of widespread pain—that is, pain in all quadrants of the body . . . and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back )—that has persisted (or that persisted) for at least three months. The pain may fluctuate in intensity and may not always be present.

> (2) At least 11 positive tender points on physical examination (citation omitted). The positive tender points must be found bilaterally (on the left and right sides of the body and both above and below the waist).[3]

> (3) Evidence that other disorders that could cause the symptoms were excluded.

SSR 12-2P at *2–3.

---

[3] SSR 12-2P further explains where the tender points are located and how physicians should detect them at *3.

The second set of criteria is the 2010 American College of Rheumatology Preliminary Diagnosis Criteria. *Id.* To find that a claimant has an MDI of FM pursuant to this set of criteria, the claimant must have all three of the following:

(1) A history of widespread pain (citation omitted),

(2) Repeated manifestations of six or more FM symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and

(3) Evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded (citation omitted).

*Id.* at *3.

The ALJ concluded that Olga did not meet either set of criteria. AR at 20. He found that she did not meet the 1990 criteria because she did not have the requisite number of tender points and because the record lacked evidence of exclusion of other disorders. *Id.* He found she that she did not meet the 2010 criteria because she did not have repeated manifestations of the six or more fibromyalgia symptoms, signs, or co-occurring conditions, and, again, because the record lacked evidence of exclusion of other disorders. *Id.*

The ALJ cites to examining physician Dr. Gaffield's report to conclude that Olga does not have the requisite tender points for an MDI of FM. AR 343. However, Dr. Gaffield never specified that Olga had no tender points. Rather, he stated that she had no "trigger points." *Id.* Dr. Gaffield makes no conclusions

about "tender points." On the other hand, examining physician Dr. Paris noted fourteen tender points, on both sides of the body, above and below the waste. AR 353. He then prescribed Olga medication for "primary fibromyalgia syndrome." AR 355. The ALJ did not discuss Dr. Paris's report, nor did he explain why it should receive less weight than Dr. Gaffield's report, to which the ALJ assigned only limited weight. *See* AR 25.

However, the Government is correct that the third element of the 1990 and 2010 criteria, which requires the exclusion of other conditions as the source of the claimant's pain, is not met. While Olga's treating physician ruled out other rheumatologic causes for Olga's multiple joint pains, including Rheumatoid Arthritis and Lupus (AR 396, 398, and 437–43), there is no evidence on the record ruling out Olga's other conditions as a source of her symptoms.

Although the ALJ committed factual error by conflating "trigger points" and "tender points" and unaccountably disregarded Dr. Paris's assessment of Olga's tender points, the Court finds that the ALJ's conclusion regarding FM is based on substantial evidence.

### B. Degenerative Disc Disease

The ALJ also found that Olga did not have any medically determinable back impairment. AR 19. The Government concedes that this finding was erroneous because the record contained a radiographic study showing degenerative disc disease. *See* AR 459. Nevertheless, the Government argues that this error was

harmless because the ALJ discussed the impairment at later steps and assessed any limitations necessary to accommodate it.

Olga argues that the error was not harmless because, even though the ALJ proceeded past step two, he necessarily did not consider the pain or other symptoms attributed to Olga's spine disease when formulating the RFC. ECF No. 10 at 5. Olga maintains that an ALJ only may consider pain or other symptoms that are attributable to an MDI when establishing an RFC. *Id.* (citing 20 C.F.R. § 404.1545). Moreover, Olga argues that the error was not harmless because the ALJ discounted her testimony, reasoning that it was inconsistent with the medical evidence. Thus, the ALJ's error regarding Olga's impairments could have influenced the ALJ's decision to discount Olga's testimony regarding the severity of her symptoms. The Court agrees with Olga that the error was not harmless.

## II. Olga's Testimony

### A. Decision to Discredit Olga's Statements Based on Medical Evidence

The ALJ was permitted to reject Olga's testimony about the severity of her symptoms only if he provided "specific, clear, and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015). This standard is the most demanding standard in Social Security cases. *Moore v. Comm'r of the SSA*, 278, F.3d 920, 924 (9th Cir. 2002). In *Brown-Hunter v. Colvin*, the Ninth Circuit explained in detail when and how an ALJ may discredit portions of the claimant's testimony. *Id.* In that case, Ms. Brown-Hunter "told the

ALJ that her functional limitations were caused in part by severe back and leg pain, coupled with swelling in her lower extremities." *Id*. at 489. The ALJ concluded that Ms. Brown-Hunter was not malingering, and that her MDIs "could reasonably be expected to cause some of the alleged symptoms. . . ." *Id*. at 491. However, the ALJ rejected Ms. Brown-Hunter's statements "concerning the intensity, persistence and limiting effects of these symptoms" finding that they were "not credible to the extent that they [were] inconsistent with the [RFC]." *Id*. The ALJ then went on to recite the medical evidence favoring the RFC.

Upon review of the ALJ's decision, the Ninth Circuit explained that, in order to find that a claimant's testimony is not credible, the ALJ "must be sufficiently specific" so that a reviewing court may confirm that the claimant's testimony was not improperly rejected. *Id*. at 493 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991)). The Ninth Circuit found that the ALJ's conclusory statement that Ms. Brown-Hunter's testimony was not credible to the extent that it was inconsistent with the objective medical evidence supporting the RFC was inadequate. *Id*. at 493–94. "This is not the sort of explanation or kind of specific reasons we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited." *Id*. at 494. The Ninth Circuit concluded that ALJs must identify which statements are not credible and explain why. *Id*. at 494 ("[P]roviding a summary of medical evidence in support of a residual functional capacity is not the same thing as

providing clear and convincing reasons for finding the claimant's symptom testimony not credible."). Failure to provide "specific, clear, and convincing reasons" for discrediting a claimant's testimony regarding the severity of her symptoms when calculating an RFC is legal error. *Id*. at 494.

The facts of this case are remarkably similar to the facts of *Brown-Hunter*. Here, the ALJ made no conclusions about malingering, and found that Olga's MDIs "could reasonably be expected to cause the alleged symptoms[.]" AR 22. The ALJ discredited Olga's testimony, stating that "the claimant's symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." AR 22. He continued, "While the claimant alleges that she is physically disabled, the objective medical evidence supports the residual functional capacity (RFC) assessment." AR 22. Like the ALJ in *Brown-Hunter*, the ALJ in Olga's case went on to list the medical evidence supporting the RFC. Although the ALJ noted that Olga's testimony was not "entirely consistent" with the medical evidence, he did not clarify which of Olga's statements were inconsistent. Additionally, providing a summary of medical evidence to support the RFC does not satisfy the Ninth Circuit's standard for providing clear and convincing reasons to discredit claimant testimony. *Brown-Hunter*, 806 F.3d at 494. Therefore, the ALJ committed legal error when he discredited Olga's testimony as inconsistent with the medical evidence.

## B. Decision to Discredit Olga's Statements Based on Receipt of Unemployment Benefits

The second reason that the ALJ discredited Olga's testimony is that she received unemployment benefits in Washington State between the third quarter of 2014 and the first quarter of 2015, which was during the period in which she alleged disability. AR 23–24. "Continued receipt of unemployment benefits does cast doubt on a claim of disability, as it shows that an applicant holds [herself] out as capable of working." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). However, the receipt of unemployment benefits alone does not establish that an individual held herself out as capable of full-time work. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). For instance, when a claimant holds herself out as capable of part-time work and receives unemployment benefits, that action is not inconsistent with her claim of disability, and the ALJ may not discredit her testimony on that basis. *Id.*

Here, the ALJ clarified that he did not consider Olga's receipt of unemployment benefits alone in rejecting her testimony. AR 23. Rather, he states that he considered whether she held herself out as capable of full-time work. *Id.* However, the ALJ based his opinion regarding Olga's representations about her ability to work on Washington law governing unemployment benefits, rather than evidence in the record. *See* AR 23–24.

The ALJ provided the following summary of Washington unemployment regulations:

For unemployment benefits claimants with established disabilities, suitable work is limited to work that the claimant can perform. See WAC 192-170-050. In some cases, physician certifications can limit the number of hours, or the type or work, that will be deemed suitable work. See WAC 192-170-050(1)(e). However, even then, an unemployment benefits claim must show that the restriction on the number of hours he or she can work, the essential functions he or she can perform, and the occupations he or she is seeking does not substantially limit employment prospects within his or her general area. See WAC See WAC 192-170-050(1)(b)(3).

AR 24.

The ALJ concluded that, because the record did not contain any physical certification restricting Olga's hours, functions, or potential occupations with respect to her unemployment claim, Olga necessarily held herself out as capable of fulltime work by applying for and receiving unemployment benefits. *Id*. However, the ALJ did not ask Olga whether she had filed documents limiting her hours, functions, or potential occupations, nor did he inquire about the representations that she made to Washington agencies about her ability to work fulltime. The ALJ points to an absence of evidence on the record to conclude that Olga held herself out as capable of fulltime work. AR 24. While the record establishes that Olga received unemployment benefits for a short period of time, it is silent as to the representations she made regarding her abilities in pursuit of unemployment benefits. Therefore, the ALJ's finding that Olga held herself out as capable of fulltime work is not based on substantial evidence, and the ALJ may not use it as a reason to discount Olga's testimony.

### C. Harmless Error

Because the Court concludes that the two reasons supporting the ALJ's adverse credibility finding are invalid, the Court must now consider whether the ALJ's reliance those reasons was harmless. *Carmickle*, 533 F.3d at 1162.

The ALJ's decision to discount Olga's testimony had a domino effect on the outcome of her case. For instance, the ALJ decided to give limited weight to Olga's treating physician because his records were predicated on her untrustworthy statements. AR 25. The ALJ explains, "Reliance on the claimant's subjective report of symptoms is problematic because they are not well-supported by the evidence as cited and discussed." *Id*. Similarly, the ALJ gave limited weight to Dr. Gaffield, an examining physician who concluded that the claimant had less than light physical RFC, in part because Dr. Gaffield based his conclusion "on subjective reports of pain from the claimant." *Id*. Furthermore, the ALJ discounted the third-party statements of Olga's family members because "[a]ll of these individuals appear to rely on the subjective allegations in assessing the claimant's functionality." AR 26.

The ALJ's adverse credibility finding regarding Olga's statements permeated his opinion and informed his formulation of Olga's RFC. Because the only two reasons the ALJ provided for discounting Olga's statements were invalid, the Court finds that these errors were not harmless.

### III.    Other Weighted Testimony

#### A. Treating Physician Dr. Davenport

The ALJ gave limited weight to treating physician Dr. Davenport's conclusions and reports.  Generally, the opinion of a treating physician is given greater weight than the opinion of other physicians.  *Ghanim v. Colvin*, 763 F.3d 1154, 1160–61 (9th Cir. 2014).  If the opinion is uncontradicted and well-supported by acceptable diagnostic techniques, then it is controlling.  *Id*. at 1160. However, "[e]ven if a treating physician's opinion is contradicted, the ALJ may not simply disregard it."  *Id*.  Rather, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence," when rejecting even a contradicted opinion from a treating physician.  *Id*. at 1161 (quoting *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).  For instance, an ALJ may discount the opinions of a treating physician if the opinions are based "'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible."  *Id*. at 1162.

The ALJ gave limited weight to treating physician Dr. Davenport's records because Dr. Davenport spent "'over half' of the time during [the relevant] visit reviewing notes with the claimant and completing paperwork."  AR 25.  The ALJ reiterates that the doctor's reliance on Olga's subjective reports is problematic because such reports are unreliable.  *Id*.  However, the ALJ gave Dr. Davenport's

report some weight because Dr. Davenport "ultimately opine[d] that the claimant retains the physical RFC to perform light work." *Id*.

There are several issues the Court now addresses related to the ALJ's treatment of treating physician Dr. Davenport's records. First, as the Court already has explained, the ALJ did not provide valid reasons for finding Olga's testimony unreliable. Therefore, the ALJ erred when he concluded that Dr. Davenport's opinions should be discounted because they were informed by Olga's statements.

Next, while it is true that Dr. Davenport opined that Olga was capable of light work, he also concluded that Olga would be absent four or more times per month if she worked full time. AR 357. At the hearing before the ALJ, the vocational expert was asked about absenteeism and responded that employers do not tolerate more than six unscheduled absences in a year. AR 62. The ALJ did not factor Dr. Davenport's conclusion regarding absenteeism into the RFC, and he provides no explanation as to why. Even if the ALJ understood Dr. Davenport's opinions to be contradicted, he erred when he did not provide "specific and legitimate reasons that are supported by substantial evidence" for rejecting such contradictory opinions.

### B. Examining Physician Dr. Gaffield

Similarly, the ALJ gave limited weight to examining physician Dr. Gaffield's reports because they were based on subjective reports from Olga. Because the ALJ erred when he discredited Olga's testimony, he also erred when

he discredited Dr. Gaffield's reports for relying on Olga's testimony. However, the ALJ did not err in limiting the weight of Dr. Gaffield's conclusions regarding Olga's abilities to the extent that they were inconsistent with Dr. Gaffield's own examination notes. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (When a doctor's clinical notes regarding the claimant's capabilities contradict the doctor's opinion, the ALJ may discount the opinion.).

### C. Reviewing Consultant Dr. Hale

The ALJ gave partial weight to state agency consultant Dr. Hale, who found that Olga was capable of medium work. AR 25. The ALJ provided specific reasons for discounting Dr. Hale's opinion, including the early (2015) date of the examination, and contradictory evidence from treating physician Dr. Davenport. The Court finds that the ALJ's decision to reduce the weight of Dr. Hale's report was supported by substantial evidence and was not error.

### D. Third-Party Statements

Olga asserts that the ALJ improperly discounted lay witness statements about her symptoms and limitations. An ALJ need only provide "germane reasons for discrediting the testimony of lay witnesses." *Bayliss*, 427 F.3d at 1218. However, when the claimant is found to be not credible, the ALJ cannot dismiss third-party statements for that reason alone. *See Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th Cir. 1993) (citing *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). As the Ninth Circuit has recognized, lay witnesses can make "independent

observations of the claimant's pain and other symptoms," even if the claimant is not credible. *Id.* "Although eyewitnesses have to rely to some extent on the communications with the claimant in ascertaining whether she is disabled or malingering, [the Ninth Circuit] ha[s] held that friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition." *Id.* In fact, these lay witnesses often know whether the claimant truly is suffering or malingering. *Id.* at 919.

Here, the ALJ gave limited weight to the statements of Olga's family members because they "appear[ed] to rely on the subjective allegations in assessing the claimant's functionality." AR 26. The ALJ continues, "Reliance on the subjective allegations is problematic because they are not well-supported by the clinical findings and observations." Although the ALJ states that he gave partial weight to these statements, he appears to have dismissed them in their entirety, as he does not identify which statements he considered and which statements he disregarded in his RFC formulation.

Following the ALJ's reasoning, he dismissed these lay witness statements because he understood them to be recitations of Olga's untrustworthy complaints about her symptoms and abilities. While certain portions of the lay witness statements may have been recitations of Olga's complaints to her family members, some statements clearly were based on the family members' interactions with her. For instance, Olga's mother comments that Olga does not sleep well because of her

pain, that Olga cannot walk "much" due to the pain she suffers, and that Olga "cannot go shopping because she has pain in her feet." AR 301. In fact, Olga's mother reports that she must help Olga "a lot with her house shores (sic)" because of Olga's pain. *Id*. If the ALJ wants to discount eyewitness testimony, "he must give reasons that are germane to each witness." *Dodrill*, 12 F.3d at 919.

## IV.     Motion for Reversal without Remand

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. Olga asks this Court to reverse the ALJ's decision. ECF No. 10 at 21. Pursuant to the Social Security Act, district courts may affirm, modify, or reverse decisions by the Commissioner "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). An immediate award of benefits is only appropriate in "rare circumstances." *Brown-Hunter*, 806 F.3d at 495 (quoting *Treichler*, 775 F.3d at 1099). It is appropriate to reverse the ALJ's determination when:

(1) the record has been fully developed and further administrative proceedings would serve no useful purpose;

(2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and

(3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Even when all of these prongs are met, district courts retain some flexibility to remand for further

proceedings when "the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled. . . ." *Id*. at 1021.

The Court first considers whether the record has been developed fully. This requirement is not met when "crucial questions" remain regarding the extent of a claimant's impairment, "given inconsistencies between his testimony and the medical evidence in the record." *Brown-Hunter*, 806 F.3d at 495 (quoting *Treichler*, 775 F.3d at 1105). Although this Court has concluded that the ALJ committed legal error by failing to specify which portions of Olga's testimony that he found not credible and why, "a reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony." *Treichler*, 775 F.3d at 1106. The Court finds that additional proceedings will resolve the extent to which Olga's pain and potential absenteeism interferes with her ability to perform past relevant work. Additionally, because the ALJ concluded that Olga could perform past relevant work, the vocational expert never was asked about other jobs in the national market that Olga could perform, if found unable to perform past relevant work. As the Court finds that further proceedings would be useful, remand, rather than an immediate award of benefits, is appropriate.

Accordingly**, IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 10**, is **GRANTED in part**.

2. Judgment shall be entered for Plaintiff.

3. Defendant's Motion for Summary Judgment, **ECF No. 11**, is **DENIED**.

4. This case is **REVERSED** and **REMANDED** for further administrative proceedings consistent with this Order pursuant to 42 U.S.C. § 405(g).

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order, enter Judgment as directed, provide copies to counsel, and **close this case**.

**DATED** December 16, 2019.

_____ *s/ Rosanna Malouf Peterson* _____
ROSANNA MALOUF PETERSON
United States District Judge